IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KIMON WHERLEY,                    §
                                  §
                    Plaintiff,    §
                                  §   Civil Action No. 3:12-CV-0242-D
VS.                               §
                                  §
JOHN SCHELLSMIDT, et al.,         §
                                  §
                    Defendants.   §

MEMORANDUM OPINION
AND ORDER

       In this action seeking unpaid overtime pay under the Fair Labor Standards Act of 1938

("FLSA"), 29 U.S.C. § 201 *et seq.*, plaintiff moves for partial summary judgment

establishing that defendants are liable under the FLSA, that he is entitled to recover

liquidated damages, and that defendants' affirmative defense of good faith lacks merit.

Concluding that plaintiff has not carried his summary judgment burden on these issues, the

court denies the motion.

I

       From 1991 until 2001, and again from 2002 until December 2011, plaintiff Kimon

Wherley ("Wherley") worked as an installer for Audio Depot, a car audio/visual and window

tint business owned and operated by defendants John and Unjoo Schellsmidt (the

"Schellsmidts").[1]  As an installer, Wherley built enclosures for subwoofers and installed

---

[1]In recounting the factual background, the court summarizes the evidence in the light
most favorable to defendants as the summary judgment nonmovants and draws all reasonable
inferences in their favor. *See, e.g.*, *Owens v. Mercedes-Benz USA, L.L.C.*, 541 F.Supp.2d

audio and visual components in the vehicles of Audio Depot customers.  Wherley performed his installation work at Audio Depot's facility.  He alleges that on the work he performed, Audio Depot provided the facilities and customers, performed the advertising, set the pricing, invoiced customers, collected payments, and remitted sales taxes to the state.

Audio Depot supplied its installers (including Wherley) with the car audio/visual components, the materials to build enclosures, and some of the equipment and tools necessary to perform the installation work.  Wherley provided some of his own hand tools and equipment (which had an estimated value of between $10,000 and $12,000) to use in connection with his installation work.  He also provided his own laptop, which he and other Audio Depot installers used to design subwoofer enclosures.

Wherley was initially hired as an "employee" of Audio Depot and was classified as an "employee" until March 2005, when Wherley approached Unjoo Schellsmidt ("Unjoo") and informed her that he wanted to be compensated in the same manner as Ron Freeman ("Freeman").  Unjoo told Wherley that Freeman was compensated differently because he was an independent contractor.  Defendants allege that Wherley responded that he wanted to be classified in the same manner as Freeman and that, after Wherley presented documentation showing that he owned his own business, Unjoo agreed to reclassify Wherley as an

---

869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

independent contractor.[2]

Wherley alleges that he was "expected" to work a minimum of 50 to 55 hours per workweek, and that he was "expected" to work on Mondays, Wednesdays, Thursdays, Fridays, and Saturdays from 9:00 a.m. until 7:00 p.m. and Tuesdays from 9:00 a.m. until 3:00 p.m. Defendants maintain that, after Wherley was reclassified as an independent contractor, he was allowed to come and go as he pleased, he was not required to call in if he was going to miss work due to illness or other obligations, and he could terminate the relationship without notice. Defendants also posit that Wherley was asked to work on projects for Audio Depot (rather than being told to do so) only when he was not working on his own projects, and that he was permitted to design and construct enclosures for speakers for his personal customers during working hours. As an independent contractor, Wherley was also allowed to work for competitors.[3]

From 2005 until Wherley resigned, Audio Depot paid Wherley at the hourly rate of $16.67. Although Wherley regularly worked more than 40 hours in a workweek, he was never paid time and one-half for overtime. Wherley complained to the Schellsmidts more

_____

[2]Wherley moves to strike the part of Unjoo's declaration in which she describes the events leading up to her reclassification of Wherley as an independent contractor. According to Wherley, "[Unjoo] classified Wherley *during* [a March 2005] telephone call and without reviewing anything." P. Mot. Strike 4. Because the court is not relying on this part of Unjoo's declaration in deciding Wherley's motion for partial summary judgment, it denies the motion to strike as moot.

[3]Wherley moves to strike Unjoo's deposition testimony that he worked for Audio Depot competitors such as Auto Sound. P. Mot. Strike 5-6. He does not argue, however, that he was not *permitted* to work for competitors.

than once in 2011 that, because he was an hourly employee, he was entitled to receive overtime when he worked more than 40 hours in a workweek.  When defendants did nothing in response, Wherley filed a complaint with the U.S. Department of Labor ("DOL"), asserting that Audio Depot was unlawfully denying him overtime pay, in violation of the FLSA.  He asserted to DOL that he was an independent contractor.  In December 2011 DOL concluded that Wherley was an "independent contractor" and that the Schellsmidts owed him back wages.  Before Audio Depot paid Wherley the back wages, however, Wherley resigned from Audio Depot and sued the Schellsmidts.

Wherley alleges that the Schellsmidts violated 29 U.S.C. §§ 207 and 215(a)(2) by employing him for workweeks longer than 40 hours without compensating him for this employment at a rate no less than one and one-half the regular rate.  He also alleges an FLSA retaliation claim.

Wherley moves for summary judgment on the issue of liability on his FLSA overtime claim and on the Schellsmidts' affirmative defenses to his entitlement to an award of liquidated damages under 29 U.S.C. § 216.

II

Because Wherley will have the burden of proof at trial on his FLSA claims, to obtain summary judgment he "must establish 'beyond peradventure all of the essential elements of the claim[s.]'"  *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  This means that Wherley must demonstrate that there are no genuine and

material fact disputes and that he is entitled to summary judgment as a matter of law.  *See,*
*e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).  "The court has
noted that the 'beyond peradventure' standard is 'heavy.'"  *Carolina Cas. Ins. Co. v. Sowell*,
603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v.
St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007)
(Fitzwater, J.)).

　　　Concerning any affirmative defense as to which Wherley will not have the burden of
proof at trial, he can meet his summary judgment obligation by pointing the court to the
absence of evidence to support the affirmative defense.  *See Celotex Corp. v. Catrett*, 477
U.S. 317, 325 (1986).  Once he does so, the Schellsmidts must go beyond their pleadings and
designate specific facts showing that there is a genuine issue for trial.  *See id.* at 324; *Little
v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is
genuine if the evidence is such that a reasonable jury could return a verdict in favor of the
Schellsmidts.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The failure
of the Schellsmidts to produce proof as to any essential element renders all other facts
immaterial.  *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex.
2007) (Fitzwater, J.).  Summary judgment is mandatory if the Schellsmidts fail to meet this
burden. *See Little*, 37 F.3d at 1076.

III

　　　The FLSA requires that employers pay employees who work more than 40 hours per
week one and one-half times their regular pay rate for each hour of overtime.  29 U.S.C. §

207(a)(1).[4]  Employee status is based on the economic realities of the relationship; the subjective beliefs of the alleged employees or employers are irrelevant to a worker's status. *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1049 (5th Cir. 1987).

"The definition of employee under the FLSA is particularly broad," and the contractual designation of the worker as an independent contractor is not necessarily controlling.  *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343, 346 (5th Cir. 2008) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (noting that the FLSA "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles")).  Instead, to determine whether a worker qualifies as an employee under the FLSA, courts in this circuit focus on "whether the alleged employee so economically depends upon the business to which he renders his services, such that the individual, as a matter of economic reality, is not in business for himself."  *Thibault v. BellSouth Telecomms., Inc.*, 612 F.3d 843, 845 (5th Cir. 2010) (citing *Carrell v. Sunland Constr., Inc.*, 998 F.2d 330, 332 (5th Cir. 1993)).  To aid in this inquiry, the court considers five non-exhaustive factors:

> (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.  No single factor is determinative.  Rather, each factor is a tool used to

---

[4]The Schellsmidts do not appear to dispute that Audio Depot is an enterprise covered by the FLSA.

> gauge the *economic dependence* of the alleged employee, and
> each must be applied with this ultimate concept in mind.

*Hopkins*, 545 F.3d at 343 (emphasis in original) (citations omitted).   The ultimate determination of whether an individual is an employee under the FLSA is a legal, and not a factual, finding.   *Brock*, 814 F.2d at 1045.   But application of the five-factor test of economic dependence "will require a factual inquiry and a full record of the applicable facts."   *Gate Guard Servs. L.P. v. Solis*, 2011 WL 2784447, at *10 (S.D. Tex. July 12, 2011).

IV

A

The court considers first the degree of control exercised by Audio Depot.   Wherley argues that Audio Depot, not he, controlled the "meaningful" economic aspects of the business.   He maintains that Audio Depot controlled the hiring and firing of the installers who worked alongside him as Audio Depot employees; it exclusively determined the products sold, the prices customers paid, and on which Audio Depot customer vehicles he worked; it made all advertising decisions; and it expected him to be at the Audio Depot facility from 9:00 a.m. until 7:00 p.m. on Mondays, Wednesdays, Thursdays, Fridays, and Saturdays, and half days on Tuesdays.   Wherley also posits that, as a practical matter, he was precluded from doing significant other work because he worked between 50 and 60 hours per week for Audio Depot.   In sum, Wherley contends that, because Audio Depot controlled the meaningful aspects of the business model, he could not plausibly be considered a "separate economic entity."   P. Mot. & Br. 14 (quoting *Brock*, 814 F.2d at 1049).

The Schellsmidts respond that Wherley was "highly skilled" in designing and installing audio and visual systems and received no direction or supervision from Audio Depot in performing his work.  They also maintain that, during the period when Wherley was classified as an independent contractor, he was not required to call in when not coming to work, was permitted to work on other projects for his own customers during work hours and was asked to work on Audio Depot projects only when available to do so, and was free to work for competitors.

Degree of control refers to whether the plaintiff possesses "real independence" in the economic relationship. *Hopkins*, 545 F.3d at 343.  "Control is only significant when it shows an individual exerts such a control over a meaningful part of the business that [he] stands as a separate economic entity."  *Brock*, 814 F.2d at 1049; *see also Reich v. Priba Corp.*, 890 F. Supp. 586, 592 (N.D. Tex. 1995) (Fish, J.).  But "the lack of supervision over minor regular tasks cannot be bootstrapped into an appearance of real independence."  *Brock*, 814 F.2d at 1049.

Although there are undisputed facts in the summary judgment record that would enable a reasonable jury to find that Audio Depot, not Wherley, controlled the meaningful aspects of the business, a factual dispute remains regarding whether Wherley controlled aspects of his schedule and the extent to which Wherley was permitted to, and did, work on projects for his own customers during Audio Depot working hours.[5]  Resolution of these

---

[5]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact."  *Valcho v. Dall.*

- 8 -

disputed facts could have a significant bearing on whether the degree of control factor weighs in favor of employee or independent contractor status.  The court thus concludes that fact issues prevent the court from determining what status the degree of control factor indicates, and that they preclude Wherley from satisfying the heavy beyond peradventure standard.

B

The second factor focuses on the extent of the relative investments of the worker and the alleged employer.

Wherley argues that Audio Depot's investment of between $785,000 and $800,000 in facilities and equipment, including the mortgage on a building, several vehicles used in the business, inventory, tools and supplies, furniture, fixtures, utilities, advertising, and insurance, substantially outweighs his $10,000 to $12,000 investment, which is primarily limited to a laptop and hand tools used to perform installation work on vehicles of Audio Depot customers.  Wherley also points out that Audio Depot employee installers also use their own tools and equipment when they perform installation work, meaning that Wherley's investment is not appreciably different from that of Audio Depot employee installers.

In response, the Schellsmidts cite *Carrell*, 998 F.2d at 333-34, in which a $15,000 investment by welders in their tools and equipment was deemed sufficient to suggest an

_____

*Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).  Here, and throughout this memorandum opinion and order, the court will summarize or provide examples of evidence that present genuine and material fact issues that require a trial.

independent contractor relationship.  They maintain that Wherley's $10,000 to $12,000 investment in tools and claim of at least $6,900 in depreciation for such tools in his federal income tax returns suggests that Wherley was an independent contractor.

The Schellsmidts' reliance on *Carrell* is misplaced because in that case the employer did not supply "*any* essential equipment" or welding tools to its welders.  *Id.* at 333.  In the present case, a reasonable jury could find that Audio Depot's investment was far greater and indicative of an employer-employee relationship.

C

Under the third factor, the court considers the degree to which the worker's opportunity for profit or loss is determined by the alleged employer.

Wherley argues that when an employer sets a full-time schedule and pays a worker an hourly rate, the employer effectively controls the worker's opportunity for profit and loss.  Although a reasonable jury could find that the Schellsmidts determined the hours that Wherley worked, the question whether Wherley was as a practical matter precluded from performing significant other work is one of fact that Wherley has not established beyond peradventure.  Accordingly, Wherley has not established beyond peradventure whether the opportunity for profit and loss factor is indicative of employee rather than independent contractor status.

D

The fourth factor examines the skill and initiative required in performing the job.

Wherley argues that the skills he used were common to other installers and that his

work afforded little or no opportunity to exercise initiative.  The Schellsmidts maintain that Wherley "had the skill and experience to independently custom design and install enclosures and sound systems."  D. Br. 9.

Courts generally "look for some unique skill set . . . or some ability to exercise significant initiative within the business."  *Hopkins*, 545 F.3d at 345.  "Routine work which requires industry and efficiency is not indicative of independence and nonemployee status."  *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1314 (5th Cir. 1976).  The Schellsmidts do not dispute that the skills on which they rely were possessed by "employee" installers who worked for Audio Depot.  This factor weighs in favor of employee status, although it is not sufficient of itself to entitle Wherley to summary judgment under the heavy beyond peradventure standard.

E

Under the fifth factor, the court considers the permanency of the relationship between the worker and alleged employer.

This factor weighs in favor of employee status when the work is done continuously and for a long period of time, but evidence that the worker provided similar services to others simultaneously weighs in favor of independent contractor status.  *See, e.g.*, *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1384-85 (3d Cir. 1985) (holding that researchers who worked continuously for long periods of time and did not, for the most part, simultaneously do similar work for other companies were employees under the FLSA); *Arkla Indus., Inc.*, 699 F.2d 748, 752 (5th Cir. 1983) (affirming district court finding of

- 11 -

independent contractor status in age discrimination suit where, although plaintiff worked for company for ten years, he "was capable of terminating relations with [defendant] upon 30 days notice and taking his business organization and talents to other manufacturers of similar or different products").

It is undisputed that Wherley worked for Audio Depot continuously from 2002 until 2011, a fact that weighs in favor of employee status. A reasonable jury could also find, however, that Wherley was permitted to terminate his employment at any time and without notice, and that he could and did work projects for his own customers during Audio Depot working hours and was permitted to work for competitors. This evidence precludes Wherley from satisfying the beyond peradventure standard as to this factor.

F

It is common in FLSA cases that "there are facts pointing in both directions" regarding the issue of employee status. *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 305 (5th Cir. 1998) (quoting *Carrell*, 998 F.2d at 334). Here, many of the undisputed facts suggest that Wherley was economically dependent on Audio Depot and was not in business for himself. For example, Wherley worked for Audio Depot for nine years. He worked exclusively at Audio Depot's facility and used Audio Depot's materials, tools, and equipment. He was "expected" to work regular hours and was paid by the hour, during hours and for wages set by Audio Depot. He had the same skill set and performed the same type of work as Audio Depot "employees." And Audio Depot provided Wherley with work assignments and billed its own customers.

On the other hand, a reasonable jury could find that Wherley was an independent contractor based on evidence that he was permitted to come and go as he pleased, to work on projects for his own customers during Audio Depot working hours and to work for competitors. Because Wherley bears the burden of proof on his FLSA claim, he must satisfy the heavy beyond peradventure standard, which he has not done with respect to critical details that bear on the determination of his status.

Accordingly, the court concludes that Wherley is not entitled to summary judgment establishing that he was an Audio Depot employee under the FLSA, and his motion is denied in this respect. *See, e.g.*, *Trahan v. Honghua Am., LLC*, 2013 WL 2617894, at *12 (S.D. Tex. June 10, 2013) (denying summary judgment motion on issue of whether plaintiff was employee or independent contractor where fact issues precluded court from deciding, as to certain of factors of five-factor test, whether factor suggested employee or independent contractor status).[6]

---

[6]Because the factors above are non-exhaustive, courts typically consider any other evidence that the parties offer bearing on whether a plaintiff is an "employee" under the FLSA. *See Hopkins*, 454 F.3d at 346; *Herman*, 161 F.3d at 305. Wherley argues that the Schellsmidts treated him in the same or similar manner as they did employee installers and as they treated Wherley during periods when they classified him as an employee. He argues that the Schellsmidts directly and indirectly admitted that they treated him as an employee in the "Employee Liability Agreement" and wage verification form, both of which were signed in May 2011, and in reclassifying him as an employee after the DOL investigation. And he posits that his work was an important and integral part of Audio Depot's business. The Schellsmidts rely on other factors to support the finding that Wherley was an independent contractor. They maintain that Wherley asked to be classified as an independent contractor and threatened to quit when the Schellsmidts discussed reclassifying him as an employee, and they posit that Wherley claimed on his federal income tax returns that he was self-employed. The court concludes that the other factors on which Wherley relies are

- 13 -

V

Wherley also moves for summary judgment establishing that he is entitled to liquidated damages and to dismissal of defendants' good faith defense.[7]

Because Wherley has not demonstrated that he is entitled to recover under the FLSA, his motion is premature insofar as he seeks to establish his entitlement to liquidated damages. And although Wherley's failure to establish at the summary judgment stage a right to recover under the FLSA does not preclude him from defeating defendants' good faith defense, the court concludes that there is a genuine issue of material fact that precludes summary judgment in this respect. For example,[8] Unjoo testified that Wherley wanted to be an independent contractor and that she agreed to reclassify his relationship with Audio Depot to that of independent contractor. The court cannot say that a reasonable jury would be unable to find in favor of the Schellsmidts on their good-faith defense.

---

insufficient to overcome the conclusion that he has not shown his employee status beyond peradventure.

[7]In a footnote in his combined motion and brief, Wherley also asserts that he is entitled to summary judgment on defendants' affirmative defenses of failure to state a claim, estoppel, and limitations. P. Mot. & Br. 20 n.10. Because Wherley has not carried his burden in this respect, the court denies this ground of his motion.

[8]The court will not discuss at length the evidence that supports denying summary judgment in this respect. *See supra* note 5.

\*   \*   \*

For the foregoing reasons, plaintiff's April 19, 2013 motion for partial summary judgment is denied, and plaintiff's objection and motion to strike evidence offered by defendants in opposition to summary judgment is denied as moot.

**SO ORDERED.**

October 23, 2013.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE