IN THE UNITED STATES COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KIMON WHERLEY | § | |
| | § | |
| Plaintiff | § | CIVIL ACTION NO. |
| | § | |
| v. | § | 3:12-CV-0242-D |
| | § | |
| JOHN SCHELLSMIDT AND UNJOO | § | |
| SUH SCHELLSMIDT individually and | § | |
| d/b/a as AUDIO DEPOT | § | |
| | § | |
| Defendants | § | |

## PLAINTIFF'S AND DEFENDANTS' FIRST AMENDED CONSOLIDATED PROPOSED JURY INSTRUCTIONS AND QUESTIONS

Plaintiff Kimon Wherley and Defendants John Schellsmidt and Unjoo Suh Schellsmidt, individually and d/b/a Audio Depot submit these First Amended Consolidated Proposed Jury Instructions and Questions. Because of the extent of agreement between the parties regarding the instructions submitted herein, and to avoid unnecessary duplication, the parties are submitting these instructions as a consolidated document.

To the extent that the parties are agreed with respect to the submissions herein, such agreed language appear in normal type.

Plaintiff's proposed language to which Defendants have not agreed is designated "Plaintiff" and appears in **bold** script.

Defendants' proposed language to which Plaintiff has not agreed is designated "Defendants" and appears in ***bold italicized*** script.

Each party reserves the right to amend this document prior to the final conference with the Court over the instructions and questions to be submitted to the jury. Each party objects to the use of any jury instructions or questions given to the jury that are other than the instructions

proposed by such party.

Respectfully submitted,

/s/ Barry S. Hersh

Barry S. Hersh
State Bar No.  24001114

*Board Certified in Labor and Employment Law*
*Texas Board of Legal Specialization*

Hersh Law Firm, PC
3626 N. Hall St., Suite 800
Dallas, Texas 75219
Telephone:     (214) 303-1022
Telecopier:     (214) 550-8170

Brian P. Sanford
State Bar No.  17630700

SANFORD BETHUNE
3610 Shire Blvd., Ste. 206
Richardson, TX  75082
Telephone:  (972) 422-9777
Telecopier:  (972) 422-9733

ATTORNEYS FOR PLAINTIFF

/s/ R. S. Ghio
R.S. Ghio
State Bar No. 00787531
Law Office of R.S. Ghio, P.C.
The Curtis Building
318 West Main St., Ste. 100
Arlington, Texas 76010
Tel. 817-543-2557
Fax 817-277-2557

ATTORNEY FOR DEFENDANTS

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was filed using the Northern District's CM/ECF system which is to send notice of service of the foregoing filing to all opposing parties by and through their attorney(s) of record via e-mail.  Certified on this 24th day of January 2014.

/s/ Barry S. Hersh

_____

Barry S. Hersh

**REQUESTED INSTRUCTION NO. 1:**
**PRELIMINARY INSTRUCTION**[1]

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case.  As the jury you will decide the disputed questions of fact.

As the Judge, I will decide all questions of law and procedure. From time to time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

Soon, the lawyers for each of the parties will make what is called an opening statement. Opening statements are intended to assist you in understanding the evidence.  What the lawyers say is not evidence.

After the opening statements, the plaintiff will call witnesses and present evidence.  Then, the defendant will have an opportunity to call witnesses and present evidence.  After the parties' main case is completed, the plaintiff may be permitted to present rebuttal evidence.  After all the evidence is completed, the lawyers will again address you to make final arguments.  Then I will instruct you on the applicable law.  You will then retire to deliberate on a verdict.

Keep an open mind during the trial.  Do not decide any fact until you have heard all of the evidence, the closing arguments, and my instructions.

Pay close attention to the testimony and evidence.  [Do not take notes.]

[Alternate 1: You will need to rely on your memories.]

[Alternate 2: If you would like to take notes during the trial, you may do so.  If you do take notes, be careful not to get so involved in note taking that you become distracted and miss part of the testimony.  Your notes are to be used only as aids to your memory, and if your memory should later be different from your notes, you should rely on your memory and not on your notes.  If you do not take notes, rely on your own independent memory of the testimony. Do not be unduly influenced by the notes of other jurors.  A juror's notes are not entitled to any greater weight than the recollection of each juror concerning the testimony.]  Even though the court reporter is making stenographic notes of everything that is said, a typewritten copy of the testimony will not be available for your use during deliberations.  On the other hand, any exhibits [may] [will] be available to you during your deliberations.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence.  Do not discuss the case even with the other jurors until all of the jurors are in the jury room actually deliberating at the end of the case.  If anyone should attempt to discuss this case or to approach you concerning the case, you should inform the Court

---

[1] Fifth Circuit Pattern Jury Instructions (Civil Cases) No. 1.1 (2006).

immediately.  Hold yourself completely apart from the people involved in the case—the parties, the witnesses, the attorneys and persons associated with them.  It is important not only that you be fair and impartial but that you also appear to be fair and impartial.

Do not make any independent investigation of any fact or matter in this case.  You are to be guided solely by what you see and hear in this trial.  Do not learn anything about the case from any other source.  [In particular, do not read any newspaper account of this trial or listen to any radio or television newscast concerning it.]  [Do not listen to any local radio or television newscasts until this trial is over, or read any local newspaper unless someone else first removes any possible reference to this trial.]

During the trial, it may be necessary for me to confer with the lawyers out of your hearing or to conduct a part of the trial out of your presence.  I will handle these matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of any trial.

It is now time for the opening statements.

Given:      _____
Denied:     _____
Modified:   _____

_____
Honorable Sidney A. Fitzwater, Chief Judge

## REQUESTED INSTRUCTION NO. __:
## DUTY TO DELIBERATE[2]

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury.  While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong.  However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges—judges of the facts.  Your only interest is to seek the truth from the evidence in the case.


Given:      _____
Denied:     _____
Modified:   _____


_____
Honorable Sidney A. Fitzwater, Chief Judge

---

[2] Fifth Circuit Pattern Jury Instructions (Civil Cases) No. 2.11 (2006).

## REQUESTED INSTRUCTION NO. __:
## GENERAL INSTRUCTIONS FOR CHARGE[3]

Now that you have heard all of the evidence, it becomes my duty to give you the instructions of the court concerning the law that you must apply in this case.

It is your duty as jurors to follow the law as I give it to you and to apply the law to the facts as you find them from the evidence in this case. You are not to single out one instruction as stating the law, but must consider the instruction as a whole. Neither are you to be concerned with the wisdom of any rule of law stated by me. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

[After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments.] [You have heard the closing arguments of the attorneys.] Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. [Do not decide who you think should win and then answer questions accordingly.] Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this it is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

[You will recall that during the course of this trial I instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose and I instructed you that you may consider some documents as evidence against one party but not against another. You may consider such evidence only for the specific limited purposes for which it was admitted. (Specific limiting instructions may be repeated as appropriate.)]

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

---

[3] Adapted from Fifth Circuit Pattern Jury Instructions (Civil Cases) No. 3.1 (2006) (modified to remove instruction about expert witnesses and credibility of witnesses with a felony history, and add definition for Plaintiff and Defendants).

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembered it, because people may forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case.  One is direct evidence—such as testimony of an eyewitness.  The other is indirect, or circumstantial, evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

[Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.]

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits that the Court has admitted into evidence.  Select your Foreperson and conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial.  After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me.  I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.  I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case

unless the Court orders otherwise.

As used in these instructions, the term "Wherley" means Plaintiff Kimon Wherley, and the term "Audio Depot" means Defendants John Schellsmidt and UnJoo Suh Schellsmidt, both individually and doing business as Audio Depot.

[You may now retire to the jury room to conduct your deliberations.]

Given:         _____
Denied:        _____
Modified:      _____


_____
Honorable Sidney A. Fitzwater, Chief Judge

## REQUESTED INSTRUCTION NO. __:
## STIPULATED FACTS[4]

The parties have agreed, or stipulated, that:

1.

This means that both sides agree that these are the facts.  You must therefore treat these facts as having been proved.

Given:          _____
Denied:         _____
Modified:       _____


_____
Honorable Sidney A. Fitzwater, Chief Judge

---

[4] Fifth Circuit Pattern Jury Instructions (Civil Cases) No. 2.3 (2006).

## REQUESTED INSTRUCTION NO. ___:
## FAIR LABOR STANDARDS ACT[5]

This case arises under the Fair Labor Standards Act (FLSA), a federal law that provides for the payment of time-and-a-half overtime pay.  Wherley claims that Audio Depot did not pay him legally required overtime pay.  Wherley further claims that Audio Depot retaliated against him after he engaged in the protected activity of complaining about overtime violations.

For Wherley to establish his claim for overtime pay, Wherley must prove each of the following by a preponderance of the evidence:

1.    That Audio Depot employed Wherley during the time period involved;

2.    That Audio Depot is covered by the FLSA; and

3.    That Audio Depot failed to pay Wherley overtime pay required by law.

The parties have agreed, or stipulated, that Audio Depot is covered by the FLSA (element #2 above).  **[ Plaintiff:  The parties also have agreed, or stipulated, that time period involved is January 25, 2009 through January 24, 2012.]**  This means that both sides agree that these are the facts.  You must therefore treat these facts as having been proved.[6]  As a result, only the first and third elements are in dispute—that is, whether Audio Depot employed Wherley during the time period involved and whether Audio Depot failed to pay Wherley overtime pay required by law.

Under the FLSA, only employees are entitled to overtime pay.  Independent contractors are not entitled to overtime pay.[7]

An employer must pay its employees at least one and one-half times their regular rate for overtime work.  Overtime work is time worked in any one workweek over 40 hours.[8]

An employee's regular rate *[Defendants: of pay]* is the basis for calculating any overtime pay due an employee.

The regular rate *[Defendants: of pay]* for a week is determined by dividing the first 40

---

[5] Adapted from Fifth Circuit Pattern Jury Instructions (Civil Cases) No. 11.1 (2006) (modified to reflect this is an overtime action, insert mention of Plaintiff's retaliation claim, add the parties' stipulations; and add that Defendants are not asserting any exemption from the FLSA's overtime requirements).

[6] Fifth Circuit Pattern Jury Instructions (Civil Cases) No. 2.3 (2006) (stipulations of fact).

[7] Instruction adopted in *Sealy v. Emcare Inc. et al*, No. 2:22-cv-00120 (S.D. Tex. Mar. 21, 2013) at Dkt. 151 at p. 4 (employee/independent contractor misclassification under the FLSA).

[8] 29 U.S.C. § 207(a); Eleventh Circuit Pattern Jury Instructions (Civil Cases) (2005) (similar instruction defining overtime work as "time worked in any one work week over 40 hours).

hours worked into the total wages paid for those 40 hours.[9]  If the employee is employed solely at a single hourly rate, the hourly rate is his regular rate of pay.[10]  The overtime rate, then, is one and one-half times that rate.

**[Plaintiff: The parties have also agreed, or stipulated, that, if you find that Wherley was an employee of Audio Depot during the time period involved, Wherley was not exempt from the FLSA's overtime requirements.]**

If, after considering all the evidence, you find that Wherley has failed to prove one or more of the elements of his overtime claim, your verdict must be for Audio Depot.

If, however, you find that Wherley has proved by a preponderance of the evidence all of the elements of his overtime claim, then your verdict must be for Wherley and you must determine the overtime compensation that Wherley is entitled to recover.

The measure of damages is the difference between what the employer should have paid the employee under the law and the amount you find the employer actually paid.

Given: _____
Denied: _____
Modified: _____

_____
Honorable Sidney A. Fitzwater, Chief Judge

---

[9] *Cf.* O'Malley, Grenig & Lee, 3C Federal Jury Practice & Instructions (Civil Cases), § 175.32 (5th Ed. 2001) ("The regular rate is the hourly rate actually paid to an employee for the normal non-overtime workweek for which the employee is employed.").

[10] 29 C.F.R. § 778.110; *see also* Eighth Circuit Model Civil Jury Instructions − Civil § 16.13 (2013).

## REQUESTED INSTRUCTION NO. __:
## EMPLOYEE/INDEPENDENT CONTRACTOR[11]

As a preliminary issue, you, the Jury, must resolve whether Wherley was an employee of Audio Depot during the time period involved, or whether Wherley was, instead, an independent contractor.

Under the FLSA, the term "employee" means "any individual employed by an employer."[12]  The term "employer" includes "any person acting, directly or indirectly, in the interest of an employer in relation to an employee."[13]

**[Plaintiff:  The definitional framework for "employee" under the FLSA is particularly broad and expansive, including within its limits persons who might not otherwise be held to be employees under the common law or other statutes.[14] ]**
You must determine whether Wherley was an employee of Audio Depot in light of the economic realities of their entire relationship.  **[Plaintiff:  You must determine whether, as a matter of economic reality, Wherley depended upon Audio Depot for his livelihood or instead whether he was in business for himself. This is a flexible test whose application is dependent on the particular circumstances of each case.  However,]**
there are five basic factors you should consider in reaching your decision:

(1)     The degree of control exercised by the alleged employer;
(2)     The extent of relative investments of the worker and the alleged employer;
(3)     The degree to which the worker's opportunity for profit and loss is determined by the alleged employer;
(4)     The skill and initiative required in performing the job; and
(5)     The permanency of the relationship.[15]

These factors are non-exclusive, and additional factors not listed above may be considered depending on the evidence produced during trial and the particular circumstances of this case.  **[Plaintiff:  For instance, another factor that you may consider is whether**

---

[11] Adapted from O'Malley, Grenig & Lee, 3C Federal Jury Practice & Instructions (Civil Cases), § 175.30 (5th Ed. 2001); *Sealy v. Emcare Inc. et al*, No. 2:22-cv-00120 (S.D. Tex. Mar. 21, 2013) at Dkt. 151.

[12] 29 U.S.C. § 203(e)(1); *see U.S. v. Rosenwasser*, 323 U.S. 360, 363 n. 3 (1945) (recognizing that the FLSA's definition of employee is "the broadest definition that has ever been included in any one act").

[13] 29 U.S.C. § 207(d).

[14] *Hopkins v. Cornerstone America*, 545 F.3d 338, 343 (5th Cir. 2008) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992); *see also Usery v. Pilgrim Equipment Co., Inc.*, 527 F.2d 1308, 1311 (5th 1976) (specifically rejecting use of common law concepts of "employee" and "independent contractor").

[15] *Hopkins*, 545 F.3d at 343 (5th Cir. 2008); *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F. 3d 299, 303 (5th Cir. 1998); *Robicheaux v. Radcliffe Material, Inc.*, 697 F.2d 662, 667 (5th Cir. 1983).

**the service rendered by the alleged employee is an integral part of the alleged employer's business.]   *[Defendants:  For instance, another factor that you may consider is whether the service rendered by the alleged employee is an integral part of the alleged employer's business  Other factors include whether a person continues to work while aware that he or she was classified by the alleged employer as an independent contractor, whether they classified themselves as self-employed, whether the person claimed tax benefits as an independent contractor, and whether the person, if terminated, could take his tools elsewhere and perform the same work.[16]]*** No single factor should determine the outcome of the case.  Rather, each factor is a tool used to gauge the economic dependence of the alleged employee, and each must be applied with this ultimate concept in mind.[17]

**[Plaintiff:**

## Degree of Control

**Control is only significant when it shows a worker exerts such a control over a meaningful part of the business that he stands as a separate economic entity. The lack of supervision over minor regular tasks does not mean the worker enjoyed economic independence.[18]**

**Where the employer exercises control over the meaningful aspects of the business, such as advertising, setting prices, and payment arrangements, this factor militates in favor of finding an employee/employer relationship.[19] Similarly, if the alleged employer sets the hours worked and the jobs performed, this is indicative of employee status.  Moreover, the fact that an employer has other workers classified as employees performing the same or similar work as the purported independent contractor is a significant factor weighing in favor of employee status.[20]**

## Relative Investment

---

[16] *See, e.g., Carrell v. Sunland Const., Inc.,* 998 F.2d 330, 333-34 (5th Cir. 1993); *Velu v. Velocity Exp. Inc.,* 666 F. Supp. 2d 300, 307-08 (E.D.N.Y. 2009).

[17] *Brock v. Mr. W Fireworks, Inc.,* 814 F.2d 1042, 1043-44 (5th Cir.1987).

[18] *Hopkins*, 545 F.3d at 343 (citing *Mr. W Fireworks*, 814 F.2d at 1049) ("[T]he lack of supervision over minor regular tasks cannot be bootstrapped into an appearance of real independence.")

[19] *See Usery v. Pilgrim Equipment Co., Inc.,* 527 F.2d 1308, 1313 (5th 1976); *see also Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1060 (2d Cir. 1988) ("An employer does not need to look over his workers' shoulders every day in order to exercise control").

[20] *Sealy*, No. 2:22-cv-00120 at Dkt. 151 at p. 6; *see also Usery,* 527 F.2d at 1314; *Superior Care, Inc.,* 840 F. 2d at 1059 (citing *Halferty v. Pulse Drug Co., Inc.,* 821 F.2d 261, 268 n. 5 (5th Cir.), *modified on other grounds on rehearing,* 826 F.2d 2 (1987)).

In considering the relative investment of the alleged employee and employer, the alleged employee's investment must be compared with the investment of the alleged employer.  The business-related expenses to be considered is the amount of large capital expenditures, such as risk capital and capital investments (e.g. facilities, equipment, supplies, inventory, office expenses, taxes, licenses, and insurance), except to the extent that the alleged employee would have incurred such expenses even if he was classified as an employee by the alleged employer.[21]  It does not include negligible items or labor itself.

### Opportunity for Profit and Loss

An independent contractor generally is one who has the opportunity to make a profit or faces a risk of taking a loss of his capital investment, while an employee generally is compensated at a predetermined rate, and has no risk of loss.  Where the only "expenditures" from which a worker obtains a return is on his own labor, such returns of this type are more properly classified as wages, not profits.[22]

Profit is the gain realized from a business over and above its expenditures.[23] When an alleged employer controls the proposed employee's schedule and pay, the proposed employer effectively controls the worker's opportunity for profit and loss, and this factor is indicative of an employee/employer relationship.[24]  Minor additional income made from work that is not connected with the business under examination is not relevant in evaluating whether a worker is an employee.[25]

That an alleged employee is made responsible for losses due to bad checks, damage, or theft is not indicative of independent contractor status.  Rather, it is

---

[21]*Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F. 3d 299, 304 (5th Cir. 1998); *see also Sealy*, No. 2:22-cv-00120 at Dkt. 151.

[22] *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1050 (5th Cir.1987).

[23] *Id.* at 1050-51.

[24] *See Cromwell v. Driftwood Contractors, Inc.*, 348 Fed. Appx. 57, 61 (5th Cir. 2009) ("The permanency and extent of this relationship, coupled with Driftwood and BellSouth's complete control over Cromwell and Bankston's schedule and pay, had the effect of severely limiting any opportunity for profit or loss by Cromwell and Bankston. Although it does not appear that Cromwell and Bankston were actually prohibited from taking other jobs while working for Driftwood and BellSouth, as a practical matter the work schedule establish by Driftwood and BellSouth precluded significant extra work."); *see also Gustafson v. Bell Atl. Corp.*, 171 F.Supp.2d 311, 325 (S.D.N.Y.2001).

[25] *Usery v. Pilgrim Equip. Co., Inc.*, 527 F.2d 1308, 1313 (5th Cir. 1976) (citing *Brennan v. Partida*, 492 F.2d 707, 709 (5th Cir. 1974).

indicative that the alleged employer chose to place this burden on the alleged employee.[26]

## Skill and Initiative

In evaluating the skill and initiative required in performing a job, the fact that a worker is skilled is not indicative of independent contractor status.[27] Rather, the relevant question is whether the proposed employee exercises initiative in, for example, locating clients, advertising, selecting products, and setting pricing.[28]   Routine work that requires industry and efficiency is not indicative of independent contractor status.[29]

## Permanency of the Relationship

Independent contractors often have fixed employment periods and transfer from place to place as particular work is offered to them.  Employees, on the other hand, usually work for only one employer or a few employers in a continuous relationship of indefinite duration and do not have business names or listings.[30] What's important is the actual length of the parties' working relationship, not whether a party may contractually terminate the relationship upon notice or at-will.[31]

## Subjective Beliefs

Subjective beliefs and the labels the parties themselves give to their relationship do not affect employee/independent contractor status under the FLSA, except to the extent that they mirror economic reality.[32] Similarly, a worker's subjective opinion that he is a businessman rather than an employee

---

[26]*Id.* at 1313.

[27] *Brock v. Superior Care, Inc*. 840 F.2d 1054, 1060 (2nd Cir.1988) ("the fact that workers are skilled is not itself indicative of independent contractor status").

[28] *Hickey v. Arkla Industries, Inc.*, 699 F.2d 748, 752 (5th Cir. 1983) (noting that the plaintiff-salesperson controlled "major components" of the business open to initiative, including advertising, marketing, and the choice of products to sell) (applying economic-realities test in ADEA case).

[29] *Usery*, 527 F.2d at 1314.

[30]*Sealy v. Emcare Inc. et al*, No. 2:22-cv-00120 (S.D.Tex. Mar. 21, 2013) at Dkt. 151.

[31]*Hopkins v. Cornerstone America*, 545 F.3d 338, 346 (5th Cir. 2008)(citing *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1053-54 (5th Cir.1987) (discussing the actual length of the working relationship)).

[32] *Usery*, 527 F.2d at 1315; *Mr. W Fireworks, Inc.*, 814 F.2d at 1044.

does not change his status under the FLSA.[33]  Where the work done, in its essence, follows the usual path of an employee, putting on an independent contractor label does not take the worker from the protection of the FLSA.[34]  What is important is the substance of the relationship.

## Tax Treatment

Neither an alleged employee listing himself as self-employed on tax returns, nor an alleged employer issuing a worker an IRS Form 1099, changes the alleged employee's status under the FLSA.[35]  The test for whether an individual is an employee under the FLSA is different and more expansive than the test applied to determine whether an individual is an employee for federal tax purposes.  It is legally possible for an individual to be an employee for FLSA purposes and, at the same time, an independent contractor for purposes of the Internal Revenue Code.[36]

Remember, you must carefully consider all of the circumstances surrounding the work relationship, and no one factor is determinative.  **[Plaintiff: What the alleged employee "could have" done under the terms of his relationship with the alleged employer is not relevant, but rather it is what the alleged employee actually "did" that is to be measured to gauge his economic dependence.[37]**

The ultimate question you must answer is whether the economic realities of the parties' relationship demonstrate that Wherley was economically dependent upon Audio Depot's business for his livelihood, or was Wherley sufficiently economically independent to fall outside the FLSA's protections.[38]**]**

Given: _____

Denied: _____

Modified: _____

---

[33] *Hopkins*, 545 F.3d at 346 (citing *Mr. W. Fireworks*, 814 F.2d at 1049).

[34] *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947) (citing cases).

[35] *Halferty v. Pulse Drug Co.*, 821 F.2d 261, 268 n. 5 (5th Cir. 1987) (concluding tax treatment is not determinative of a worker's FLSA status); *see also Esquivel v. Hillcoat Props., Inc.*, 484 F. Supp. 2d 582, 584 (W.D. Tex. 2007); *Chapman v. A.S.U.I. Healthcare of Texas, Inc.*, 2012 WL 3614187, at *4 (S.D.Tex. Aug. 21, 1012) (1099 designations only show employer's subjective belief that workers are independent contractors, and subjective beliefs do not affect employee status under the FLSA).

[36] *Hopkins*, 545 F.3d at 347; *Robicheaux v. Radcliffe Material, Inc.*, 697 F.2d 662, 667 (5th Cir. 1983).

[37] *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1047 (5th Cir.1987).

[38] *Robicheaux*, 697 F.2d at 666.

_____
Honorable Sidney A. Fitzwater, Chief Judge

**REQUESTED INSTRUCTION NO. \_\_:**
**NO WAIVER OF OVERTIME RIGHTS**[39]

The law does not allow an employee to waive employee status, give up his right to overtime pay under the FLSA, or enter into an agreement agreeing not to be paid overtime. **[Plaintiff:  Accordingly, in deciding whether Wherley is entitled to overtime wages, you are not to consider whether Wherley was told that he would not receive overtime compensation for his work.]**

Given:      _____
Denied:     _____
Modified:   _____

_____
Honorable Sidney A. Fitzwater, Chief Judge

---

[39] *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945); *see also Robicheaux v. Radcliffe Material, Inc.*, 697 F.2d 662, 667 (5th Cir. 1983); *Donovan v. Road Rangers Country Junction, Inc.*, 736 F.2d 1004, 1007 (5th Cir. 1984) ("It is well established that the overtime requirements of the Fair Labor Standards Act are binding and cannot be waived by the employees").

REQUESTED INSTRUCTION NO. __:
DEPARTMENT OF LABOR INVESTIGATION

**[Plaintiff:  An employee's right to sue an employer for overtime compensation is not terminated when the U.S. Department of Labor (DOL) simply investigates an employer or when an employee rejects a DOL-supervised payment of back wages.[40]  An employee is entitled to reject a DOL-supervised payment and instead file his own lawsuit for any number of reasons, including that he is not a party to negotiations between the DOL and employer, the DOL cannot award certain statutory damages that only a court may award, or because the employee finds the DOL-supervised amount too low.[41]  The fact that Wherley did not accept the DOL-supervised payment negotiated between the DOL and Audio Depot, and filed this lawsuit rather than accept the DOL-supervised amount, may not be considered as part of your deliberations.]**

*[Defendants:  In this case, there is evidence that the U.S. Department of Labor investigated a complaint filed by Wherley against Audio Depot and that Audio Depot agreed to make certain payments as a result of the findings of the Department of Labor.  With respect to this investigation, the conclusions reached by the Department of Labor, and the subsequent agreement between Audio Depot and the Department of Labor, you are instructed as follows:*

*1.  An employee's right to sue an employer for overtime compensation is not terminated when the Department of Labor investigates a complaint or makes findings regarding that complaint.*

*2.  The Department of Labor's findings may be considered by you in determining whether Audio Depot was required to pay overtime to Wherley. However, that decision is not binding in this case, and you may not defer your decision to the Department of Labor.  You are required to make an independent determination of the issues presented to you in these instructions and the accompanying questions.*

*3.  The agreement between the Department of Labor and Audio Depot*

---

[40] *Pedigo v. Austin Rumba, Inc.*, 722 F.Supp.2d 714, 720 (W.D.Tex.2010) (explaining that Plaintiffs have a right to reject settlement offers provided in conjunction with the DOL and that acceptance of such offers is valid only where (1) the employer tenders "payment in full" and (2) the employee agrees "to accept such payment"); *Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537, 538–40 (5th Cir.1977) (explaining that agreements between employer and employee and supervised by the DOL are valid only when the employee agrees to accept the payment and the payment was made in full); *see also Alfaro v. H. Roslin Staffing Group, LLC*, No. 3:12–cv–00551–M, 2012 WL 3925877, at *4 (N.D. Tex. Sept. 10, 2012) (finding settlement reached between the DOL and Defendants to be irrelevant to Plaintiff's overtime lawsuit) *aff'd*, --- F. App'x ----, 2013 WL 6284424 (5th Cir. Dec. 5, 2013).

[41] *Owens v. Marstek, LLC*, No. 3:11–CV–1435–B, 2013 WL 25512, at *2 (N.D. Tex. Jan. 2, 2013).

**regarding the payment and calculation of back pay is not binding on this litigation. Wherley is entitled under the law to reject that settlement and file suit.  In addition, you are not to construe Audio Depot's agreement with the DOL as any admission of liability in this case.  The issue of liability is to be decided independently by you based upon the instructions I am giving you.].**

Given:          _____
Denied:         _____
Modified:       _____

_____
Honorable Sidney A. Fitzwater, Chief Judge

## REQUESTED INSTRUCTION NO. __:
## WILLFULNESS[42]

If you find that Audio Depot violated the FLSA by failing to pay all legal required overtime compensation, then you must also consider whether Audio Depot's violation was "willful." To establish willfulness, Wherley must prove by a preponderance of the evidence that Audio Depot either:

1.      Knew that its conduct violated the FLSA; or

2.      Showed reckless disregard as to whether its conduct violated the FLSA.

**[Plaintiff: An employer commits a willful violation by disregarding the possibility that it is violating the FLSA, or if it is evidently indifferent to the FLSA's requirements.]**

Given:      _____
Denied:     _____
Modified:   _____

_____
Honorable Sidney A. Fitzwater, Chief Judge

---

[42] Adapted from Fifth Circuit Labor & Employment Pattern Jury Instructions – Civil § 11.9.4 (ADEA—Willful Violations); 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988); *Singer v. City of Waco, Texas*, 324 F.3d 813, 821-22 (5th Cir. 2003); *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990); *Halferty v. Pulse Drug Co., Inc.*, 826 F.2d 2, 3 (5th Cir.1987).

**[Plaintiff: REQUESTED INSTRUCTION NO. __:**
**AUDIO DEPOT'S BURDEN[43]**

If you find that Audio Depot violated the FLSA by failing to pay all legal required overtime compensation, you must also determine whether or not Audio Depot did so in good faith, and whether or not it had reasonable grounds for believing that its actions or omissions were not violations of the FLSA.  Audio Depot must prove by a preponderance of the evidence that it had both:

    (1)    A subjective good-faith belief that it was in compliance with the FLSA, and

    (2)    An objectively reasonable basis for believing that it was in compliance with the FLSA.

    Audio Depot's burden to prove both of these elements is substantial.

    In order to meet their substantial burden to show subjective good faith, Audio Depot must show that it took affirmative steps to investigate the FLSA's requirements and confirm its classification of Wherley complied with the FLSA.

    In order to meet their substantial burden to show objective reasonableness, Audio Depot must prove that it operated under a mistaken, although reasonable, belief that its actions complied with the FLSA.  Audio Depot may not rely on its ignorance of the law.

    An employer cannot satisfy its burden to show subjective good faith and objective reasonableness if it did not make an investigation to ascertain the FLSA's requirements before the U.S. Department of Labor began its investigation or before being contacted by the plaintiff's counsel.[44]  Even if an employer takes affirmative action to ascertain its compliance with the FLSA, these steps may be insufficient if its inquiry is too general, is not directed towards the proper issues, or is not sufficiently resolved.[45]

---

[43] 29 U.S.C. § 260; 29 C.F.R. § 790.22; adapted from *Parker v. ABC Debt Relief, Ltd., Co. et al*, No. 3:10-cv-01332-P (N.D.Tex.  Sept. 11, 2013) at Dkt. 215 at pp. 9-10; *see also Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468-69 (5th Cir. 1979) ("Even inexperienced businessmen cannot claim good faith when they blindly operate a business without making any investigation as to their responsibilities under the labor laws.  Apathetic ignorance is never the basis of a reasonable belief."); *York v. City of Wichita Falls, Tex.,* 763 F. Supp. 876, 882 (N.D. Tex. 1990) ("[G]ood faith includes the duty to investigate potential liability under the FLSA") (citing *Barcellona,* 597 F.2d at 469).

[44]*Barcellona,* 597 F.2d at 469.

[45]*See Reich v. Southern New Eng. Telecomm. Corp.*, 121 F.3d 58, 72 (2d Cir. 1997) (deeming employer's general inquiry to local Wage-Hour office about legality of pay system insufficient to establish good-faith defense; employer must "ask the appropriate question in its inquiry").

**Given:** _____

**Denied:** _____

**Modified:** _____

_____

**Honorable Sidney A. Fitzwater, Chief Judge]**

## REQUESTED INSTRUCTION NO. ___:
## DAMAGES - OVERTIME COMPENSATION[46]

If you find that Audio Depot did not pay Wherley all legally required overtime pay, you must determine the amount of overtime compensation that Wherley is due.  In determining damages, it is Wherley's burden to establish, by a preponderance of the evidence, the amount of damages to which he is entitled.

*[Defendants:  You should not interpret the fact that I am giving instructions about the plaintiff's damages as an indication in any way that I believe that the plaintiff should, or should not, win this case.][47]*

The measure of damages for a violation of the FLSA's overtime requirement is the difference between what the employee should have been paid under the FLSA and the amount the amount that the employer actually paid the employee.  An employer must pay its employees **[Plaintiff:  at least]** 1.5 times their regular rate for overtime work.  Overtime work is all hours worked in any one workweek over 40 hours.[48]

**[Plaintiff:  The "regular rate" for a week is determined by dividing the first 40 hours worked into the total wages paid for those 40 hours.[49]  If the employee is employed solely at a single hourly rate, the hourly rate is his regular rate of pay.[50]**

---

[46] Adapted from O'Malley, Grenig & Lee, 3C Federal Jury Practice & Instructions (Civil Cases), § 175.60 (5th Ed. 2001).

Defendants propose that, since there is no dispute as to the applicable pay rate in this case, the jury questions be limited to the issue of how many overtime hours were worked by Wherley, and that the Court simply multiply that number by the overtime rate, so as to simply the issues before the jury.

Plaintiff, on the other hand, proposes that the jury determine the amount of overtime compensation that is due Wherley as supported by the Fifth Circuit Pattern Jury Instructions (Civil Cases) No. 11.1 (2006) (defining measure of damages as the difference between what the employer should have paid the employee under the law and the amount you find the employer actually paid), the Eighth Circuit Model Pattern Jury Instructions – Civil § 16.60 (asking for amount of unpaid overtime compensation), Eleventh Circuit Pattern Jury Instructions § 4.14 (same), and O'Malley, Grenig & Lee, 3C Federal Jury Practice & Instructions (Civil Cases), § 175.71 (5th Ed. 2001) (same).

[47] Adapted from Fifth Circuit Pattern Jury Instructions (Civil Cases) No. 2.22 (Cautionary Instructions on Damages) (2006).

[48] 29 U.S.C. § 207(a); Eleventh Circuit Pattern Jury Instructions (Civil Cases) (2005) (similar instruction defining overtime work as "time worked in any one work week over 40 hours).

[49] *Cf.* O'Malley, Grenig & Lee, 3C Federal Jury Practice & Instructions (Civil Cases), § 175.32 (5th Ed. 2001) ("The regular rate is the hourly rate actually paid to an employee for the normal non-overtime workweek for which the employee is employed.").

[50] 29 C.F.R. § 778.110; *see also* Eighth Circuit Model Civil Jury Instructions – Civil § 16.13 (2013).

---

**The overtime rate, then, is one and one-half times that rate. ]**

The parties have agreed, or stipulated, that Wherley received "straight time" pay for hours worked over 40 in a week and, therefore, Wherley's overtime rate is $8.335 per hour. **[Plaintiff:  This means that both sides agree that these are the facts.  You must therefore treat these facts as having been proved.[51]** *[Defendants: This means that both sides have agreed that IF you find that Wherley was an employee, then the measure of damages would be the number of hours he worked over 40 in any workweek during the relevant time period multiplied by $8.335]*

The phrase "hours worked" includes all time spent by an employee that was primarily for the benefit of the employer or the employer's business.  Such time constitutes hours worked if the employer knew or should have known that the work was being performed.[52]

Rest or break periods of 20 minutes or less must be included in hours worked**. [Plaintiff:  They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked and may not be offset against other working time such as compensable waiting time or on-call time.[53]]**

Bona fide meal periods during which an employee is completely relieved of duty that are long enough to enable the employee to use the time effectively for his own purposes are not considered hours worked.[54]  The employee must be completely relieved from duty for the purposes of eating regular meals.  The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. **[Plaintiff:  For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.[55]  The critical issue is whether the employer or employee can use the meal time effectively for his own purposes.[56] Whether the time was spent predominantly for the employer's or employee's benefit depends on all the facts and circumstances of each case.[57]  Lunches generally are not hours worked, unless the employee is completely relieved from**

---

[51] Fifth Circuit Pattern Jury Instructions (Civil Cases) No. 2.3 (2006) (stipulations of fact).

[52] Eighth Circuit Pattern Jury Instructions − Civil § 16.20 (2013).

[53] 29 C.F.R. § 785.18.

[54] Eighth Circuit Model Civil Jury Instructions − Civil § 16.20 (2013); *see also* 29 C.F.R. § 785.19.

[55] 29 C.F.R. § 785.19.

[56] *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 266 (5th Cir. 1998).

[57] *Id.*

**duty.**[58] ]

　　　You must determine the number of uncompensated overtime hours worked by Wherley, ***[Defendants: if any,]*** based on all of the evidence.  The law requires an employer to keep records of how many hours its employees work and the amount they are paid.  **[Plaintiff: In this case, Wherley claims that that Audio Depot failed to keep and maintain adequate records of his work during lunch periods.  Wherley also claims that Audio Depot's failure to keep and maintain adequate records has made it difficult for Wherley to prove the exact amount of his claim relating to work during lunches.]**  If you find that Audio Depot failed to keep or maintain adequate records of Wherley's hours worked or that the records kept by Audio Depot are inaccurate or incomplete, then you must accept Wherley's estimate of hours worked, even if it is not exact or precise, unless you find it to be unreasonable. Audio Depot has the burden to prove that Wherley's estimation is unreasonable. [59]

Given:　　　　_____

Denied:　　　 _____

Modified:　　 _____


_____

Honorable Sidney A. Fitzwater, Chief Judge

---

[58] *Hartsell v. Dr. Pepper Bottling Co. of Tex.*, 207 F.3d 269, 274 (5th Cir. 2000) (citing 29 C.F.R. § 785.19).

[59] Adapted from Eighth Circuit Model Civil Jury Instructions (2012) No. 10.03; *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946) ("The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the [FLSA.] . . . Nor is such a result to be condemned by the rule that precludes the recovery of uncertain and speculative damages."); *Hopkins v. Texas Mast Climbers, LLC*, 2005 WL 3435033, *6 (S.D.Tex. Dec. 14, 2005) ("When an employer has failed to maintain accurate payroll records, the employee's initial burden is to make out a prima facie case that the FLSA has been violated and to produce some evidence to show the amount and extent of the violation. … This is not a heavy burden. The employee meets his burden if he produces sufficient evidence, which may consist of his own credible testimony, to show the amount of work by "reasonable inference." The evidence may be inexact or approximate. The burden then shifts to the employer to present evidence of the actual hours the employee worked to contradict the employee's evidence").

### REQUESTED INSTRUCTION NO. ___:
### FLSA RETALIATION GENERALLY[60]

In addition to his claim for overtime compensation, Wherley claims that Audio Depot retaliated against him for engaging in activity protected under the FLSA *[Defendants: By reducing his hourly rate].*

It is unlawful for an employer to retaliate against an employee for engaging in activity protected by the FLSA.[61]

To prove unlawful retaliation, Wherley must prove by a preponderance of the evidence that Audio Depot reduced his hourly rate of pay **[Plaintiff: or in any other manner discriminate against him]** because he engaged in a "protected activity."

Protected activity includes an employee's informal, internal complaint—oral or written—about a violation of the FLSA's requirements to his employer.[62]   It is not necessary for an employee to invoke the FLSA or make a specific statement that the employer violated the FLSA for there to be protected activity.[63]   An employee's activities were protected if he was sufficiently clear and detailed for a reasonable employer to understand them, in light of both content and context, as an assertion of rights protected under the FLSA.[64]

Protected activity also includes filing an overtime complaint with the U.S. Department of Labor as well as participating in a FLSA investigation conducted by the Department of Labor.[65]

Audio Depot need not actually have known that Wherley was asserting rights under the FLSA, so long as a reasonable employer in its circumstances and armed with its knowledge of the relevant context would have had a fair notice of Wherley's assertion of rights protected by the

---

[60] Adapted from Fifth Circuit Labor & Employment Pattern Jury Instructions – Civil § 11.6.1 (Title VII—Retaliation) (2009) (general form of retaliation instruction).

[61] 29 U.S.C. § 215(a)(3).

[62] *Kasten v. Saint Gobain Perform. Plastics Corp.*, __ U.S. __, 131 S. Ct. 1325, 1333 (Mar. 22, 2011).

[63] *Olivio v. Crawford Chevrolet, Inc.*, 799 F. Supp. 2d 1237, 1244 (D.N.M. 2011)(inferring from complaints about waiting between assignments were complaints about *not being paid* to wait between assignments); *Maynor v. Dow Chem. Co.*, 671 F. Supp. 2d 902, 925 (S.D. Tex. 2009); *Cf. Love v. Re/Max of America, Inc.*, 738 F.2d 383, 384, 387 (10th Cir. 1984)(affirming verdict of retaliation under the Equal Pay Act where employer fired employee two hours after she submitted a memo requesting a raise and attaching a copy of the statute).

[64] *Kasten*, 131 S. Ct. at 1335.

[65] *See Martinez v. Bohls Bearing Equipment Co.*, 361 F.Supp.2d 608, 616-17 (W.D.Tex. 2005); *see also Boscarello v. Audio Video Sys., Inc.*, 784 F. Supp. 2d 577, 581 n. 5 (E.D. Va. 2011) (recognizing that 29 U.S.C. § 215(c) and pertinent case law make clear that providing testimony in an FLSA action conducted in judicial or administrative preceeding qualifies as a protected activity) (citations omitted).

FLSA.[66]

Wherley does not have to prove that the laws he complained about were actually violated. It is sufficient if Wherley had a good-faith belief that they might be violated.[67]

If Wherley shows that he engaged in protected activity, you must consider whether Wherley also has proven that Audio Depot reduced his hourly rate of pay based in part on its knowledge of his protected activity.[68] Wherley does not have to prove that unlawful retaliation was the sole reason for Audio Depot's decision,[69] only that his protected activity was a motivating factor in Audio Depot's decision-making.[70]

If you disbelieve the reason Audio Depot has given for its decision, you may infer that Audio Depot reduced Wherley's pay rate because he engaged in protected activity.[71]

Given: _____

Denied: _____

Modified: _____

_____
Honorable Sidney A. Fitzwater, Chief Judge

---

[66] *Kasten,* 131 S. Ct. at 1335.

[67] *Sapperstein v. Hager*, 188 F.3d 852, 856-57 (7th Cir. 1999) ("There is no requirement that those laws must actually be violated. It is sufficient that the plaintiff had a good-faith belief that they might be violated,"); *Haynes v. Crescent Real Estate Equities, LLC,* No. H-11-2201, 2012 WL 2574749, *5- 6 (S.D. Tex. Jul. 02, 2012) (same).

[68] *Little v. Technical Specialty Prods. LLC,* No. 4:11–CV–717, 2013 WL 5755333, at *5 (E.D. Tex. Oct. 23, 2013) ("The phrase 'based in part on' has been held to describe a 'but-for' causation connection, which is consistent with both FLSA retaliation case law in the Fifth Circuit, as well as the Supreme Court's decision in [*University of Texas Southwestern Medical Center v. Nassar,* ⸺ U.S. ⸺, 133 S.Ct. 2517 (2013)]").

[69] Fifth Circuit Labor & Employment Law Pattern Jury Charges Civil § 11.6.1 (Title VII—Retaliation) (2009) (sole reason not required) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241 n.7 (1989)).

[70] *See Kanida v. Gulf Coast Med. Personnel LP*, 363 F.3d 568, 580 n. 12 (5th Cir. 2004)(affirming jury instruction defining "but for" causation in FLSA retaliation cases as proof that the employee's complaint "was a motivating factor in the alleged adverse employment actions.").

[71] Fifth Circuit Labor & Employment Law Pattern Jury Charges Civil § 11.6.1 (Title VII—Retaliation) (2009) (permissive inference instruction) (citing *Ratliff v. City of Gainesville*, 256 F.3d 355, 359- 62 (5th Cir. 2001)); *Kanida v. Gulf Coast Medical Personnel LP*, 363 F.3d 568, 573-74 (5th Cir. 2004) (permissive inference instruction required in FLSA case).

## REQUESTED INSTRUCTION NO. ___:
## DAMAGES - FLSA RETALIATION

If you find that Audio Depot violated the FLSA by unlawfully retaliating against Wherley, then you also must determine the amount of damages that Audio Depot's retaliation has caused Wherley.

In determining damages, it is Wherley's burden to establish, by a preponderance of the evidence, the amount of damages to which he is entitled, if any.  Your award must be based on evidence and not speculation or guesswork.  On the other hand, Wherley need not prove the amount of his harm with mathematical precision, but only with as much definitiveness and accuracy as the circumstances permit.

You should consider the following elements of damages and no others:  only the economic loss, including back pay and fringe benefits, that Wherley would have received from Audio Depot had it not unlawfully retaliated against him.[72]

Given:            _____
Denied:           _____
Modified:         _____


_____
Honorable Sidney A. Fitzwater, Chief Judge

---

[72] Adapted from Court's Jury Instructions in *Black v. SettlePou PC*, Case No. 3:10-cv-01418-K, Dkt. 107 at pp. 13-14.

**PLAINTIFF'S REQUESTED VERDICT FORM**

As used in this charge, the term "Wherley" means Plaintiff Kimon Wherley, and the term "Audio Depot" means Defendants John Schellsmidt and Unjoo Suh Schellsmidt, both individually and doing business as Audio Depot.

## QUESTION NO. 1

Was Wherley an employee of Audio Depot [before November 23, 2011] [during the time period involved]?

Answer "Yes" or "No."

_____

If your answer is "Yes," go to Question No. 2.  If your answer is "No," go to Question No. 6 (FLSA Retaliation).

## QUESTION NO. 2

Did Wherley work overtime hours in any workweek during the time period involved for which he did not receive overtime compensation as required by the FLSA?

Answer "Yes" or "No."

_____

If your answer is "Yes," go to Question Nos. 3(A) and (B).  If your answer is "No," then go to Question No. 6 (FLSA Retaliation).

## QUESTION NO. 3

(A)      In failing to pay overtime compensation, did Audio Depot know that its conduct violated the FLSA?

Answer "Yes" or "No":

_____

(B)      In failing to pay overtime compensation, did Audio Depot act with reckless disregard as to whether its conduct violated the FLSA?

Answer "Yes" or "No":

_____

If you answered "Yes" to either Question No. 3(A) **or** 3(B), then go to Question No. 5(B).[73]  If you answered "No" to **both** Question Nos. 3(A) **and** 3(B), then go to Question Nos. 4(A) and 4(B).

## QUESTION NO. 4

(A)      In failing to pay overtime compensation, did Audio Depot prove that it had a subjective good-faith belief that it was in compliance with the FLSA?

Answer "Yes" or "No":

_____

(B)      In failing to pay overtime compensation, did Audio Depot prove that it had an objectively reasonable basis for believing that it was in compliance with the FLSA?

Answer "Yes" or "No":

_____

Go to Question Nos. 5(A).

## QUESTION NO. 5

How much overtime compensation is owed to Wherley for the time period involved:

(A)      January 25, 2010 through January 24, 2012?  $ _____

(B)      January 25, 2009 through January 24, 2012?  $ _____

Go to Question No. 6.

## QUESTION NO. 6

Did Audio Depot reduce Wherley's pay rate or otherwise discriminate against Wherley because he engaged in protected activity under the FLSA?[74]

Answer "Yes" or "No."

---

[73] *See Singer v City of Waco*, 324 F.3d 813, 823 (5th Cir. 2003) (holding that a finding of willfulness is dispositive of the liquidated damages issue).

[74] Adapted from the 5th Circuit Labor & Employment Pattern Jury Charges No. 11.6.1 (2009).

_____

If you answer "Yes", go to Question No. 7.  If your answer is "No" to this question, then proceed to the last page.

**QUESTION NO. 7**

What amount of money, if paid now in cash, would compensate Wherley for damages causes by Audio Depot's unlawful retaliation against Wherley?

$ _____

**CERTIFICATION**

We, the jury, have answered the above questions as indicated and return this to the Court as our unanimous verdict.

DATE: _____     BY: _____
                                        Foreperson

Given:        _____
Denied:       _____
Modified:     _____

_____
Honorable Sidney A. Fitzwater, Chief Judge

## DEFENDANTS' REQUESTED VERDICT FORM

As used in this charge, the term "Wherley" means Plaintiff Kimon Wherley, and the term "Audio Depot" means Defendants John Schellsmidt and Unjoo Suh Schellsmidt, both individually and doing business as Audio Depot.

## QUESTION NO. 1

Was Wherley an employee of Audio Depot from January 25, 2009 until November 23, 2011?

Answer "Yes" or "No."

_____

If your answer is "Yes," go to Question No. 2.  If your answer is "No," do not answer Questions 2-6, but go to Question No. 6 (FLSA Retaliation).

## QUESTION NO. 2

Did Wherley work overtime hours in any workweek from January 25, 2009 until November 23, 2011 for which he did not receive overtime compensation as required by the FLSA?

Answer "Yes" or "No."

_____

If your answer is "Yes," go to Question Nos. 3(A) and (B).  If your answer is "No," then do not answer Questions 2-6, but go to Question No. 6 (FLSA Retaliation).

## QUESTION NO. 3

(A)     In failing to pay overtime compensation, did Audio Depot know that its conduct violated the FLSA?

Answer "Yes" or "No":

_____

(B)     In failing to pay overtime compensation, did Audio Depot act with reckless disregard as to whether its conduct violated the FLSA?

Answer "Yes" or "No":

_____

If you answered "Yes" to **either** Questions No. 3(A) **<u>or</u>** 3(B), then go to Question No. 4. If you answered "No" to **both** Questions No. 3(A) **<u>and</u>** 3(B), then <u>do not answer Question No. 4, but go to</u> Question No. 5.

## <u>QUESTION NO. 4</u>

How many overtime hours did Wherley work for the period of January 25, 2009 through November 22, 2011?

Answer:  _____ total overtime hours.

Go to Question No. 7

## <u>QUESTION NO. 5</u>

How many overtime hours did Wherley work for the period of January 25, 2010 through November 22, 2011?

Answer:  _____ total overtime hours.

Go to Question No. 6
.

## <u>QUESTION NO. 6</u>

Did Audio Depot reduce Wherley's pay rate because he engaged in protected activity under the FLSA?[75]

Answer "Yes" or "No."

_____

If you answer "Yes", go to Question No. 7.  If your answer is "No" to this question, then <u>answer no more questions and</u> proceed to the last page.

_____

_____

## **QUESTION NO. 7**

What amount of money, if paid now in cash, would compensate Wherley for damages causes by Audio Depot's unlawful retaliation against Wherley? As previously instructed, you are to consider only the economic loss, including back pay and fringe benefits, that Wherley would have received from Audio Depot, if any, had Audio Depot not unlawfully retaliated against him

Answer in dollars and cents.

$ _____

_____

### **CERTIFICATION**

We, the jury, have answered the above questions as indicated and return this to the Court as our unanimous verdict.

DATE: _____        BY: _____
                                         Foreperson

Given:        _____
Denied:       _____
Modified:     _____

_____
Honorable Sidney A. Fitzwater, Chief Judge