IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KIMON WHERLEY, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:12-CV-0242-D |
| VS. § | |
| § | |
| JOHN SCHELLSMIDT, et al., § | |
| § | |
| Defendants. § | |

MEMORANDUM OPINION
AND ORDER

Following a jury trial and the entry of judgment in his favor for unpaid overtime pay and liquidated damages under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, plaintiff Kimon Wherley ("Wherley") moves for an award of $114,367.50 in attorney's fees and $470.79 in nontaxable expenses. For the reasons that follow, the court grants the motion to the extent that it awards Wherley attorney's fees in the sum of $71,695.00 and nontaxable expenses in the sum of $470.79.

I

Wherley brought this suit under the FLSA against defendants John Schellsmidt ("John") and Unjoo Suh Schellsmidt ("Unjoo"), individually and d/b/a/ Audio Depot ("Audio Depot" or "defendants"), for unpaid overtime pay and retaliation. The jury returned a verdict in favor of Wherley on his claim for unpaid overtime pay, finding that defendants had willfully violated the FLSA, and in favor of defendants on the retaliation claim. The court entered judgment in favor of Wherley against defendants, jointly and severally, in the

principal sum of $8,068.95, together with liquidated damages in the sum of $8,068.95, post-judgment interest, and taxable costs of court, as calculated by the clerk of court.

Wherley now moves for an award of $114,367.50 in attorney's fees and $470.79 in nontaxable expenses. He seeks attorney's fees for the services of two attorneys, Barry S. Hersh, Esquire ("Hersh") and Brian P. Sanford, Esquire ("Sanford"), at the hourly rate of $390 for both attorneys. Wherley maintains that Hersh and Sanford worked a combined total of 455.6 hours on this case, and that he has voluntarily eliminated "excessive, redundant or otherwise unnecessary hours," P. Br. 5, through itemized reductions, and has applied an additional across-the-board voluntary reduction of 15% because he did not recover all actual damages sought or prevail on his retaliation claim. Wherley thus seeks attorney's fees for 220.6 hours of work by Hersh and 72.7 hours of work by Sanford (293.3 hours total), representing $86,024.25 in fees for Hersh and $28,343.25 in fees for Sanford.

Defendants object to Wherley's application on the following grounds: (1) he is seeking fees for services that were not reasonably necessary; (2) he is requesting fees based on excessive and unreasonable billing rates; and (3) the fees requested should be adjusted downward based on the *Johnson* factors.[1] In pertinent part, they maintain that Sanford's fees should be excluded entirely; that Hersh's fees should be reduced by 4.7 hours spent on a motion for partial summary judgment, by an additional 10% for block billing, and by an additional 60% for unsuccessful causes of action and claims for damages; and that the hourly

---

[1] *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

rates requested for both attorneys should be reduced. Defendants do not challenge the amount that Wherley seeks for nontaxable expenses.

II

"Under the FLSA, an employer who violates the statute is also required to pay attorney's fees." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing 29 U.S.C. § 216(b)). The Fifth Circuit "use[s] the lodestar method to calculate an appropriate attorney's fee award under the FLSA." *Id.* (quoting *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006)) (internal quotation marks omitted). "The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for [the] work." *Id.* (citation omitted). "The court should exclude all time that is excessive, duplicative, or inadequately documented." *Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379-80 (5th Cir. 2010). "[A]fter calculating the lodestar, a district court may enhance or decrease the amount of attorney's fees based on 'the relative weights of the twelve factors set forth in *Johnson* [*v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)].'"[2] *Black*, 732 F.3d

---

[2]The *Johnson* factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. The Supreme Court has barred any use of the sixth factor. *Merrick v. Scott*, 2011 WL 1938188, at *1 n.3 (N.D. Tex. May 20, 2011) (Fitzwater, C.J.) (quoting *Rutherford v. Harris Cnty., Tex.*, 197

at 502 (citations omitted). The fee applicant bears the burden of substantiating both the requested hours and the hourly rates. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

### III

To determine the lodestar, the court first considers whether the requested hourly rate for Hersh's services is reasonable.[3]

### A

"The hourly rates to be used in the lodestar calculation are determined by 'the prevailing market rates in the relevant community.'" *Barrow v. Greenville Indep. Sch. Dist.*, 2005 WL 6789456, at *15 (N.D. Tex. Dec. 20, 2005) (Fitzwater, J.) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)), *aff'd*, 2007 WL 3085028 (5th Cir. Oct. 23, 2007). As the fee applicant, Wherley "bears the burden of demonstrating 'that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id*. (quoting *Blum*, 465 U.S. at 895 n.11). "[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]" *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).

Defendants maintain that Hersh's requested hourly rate is unreasonable, and they ask the court to reduce it to $250. They argue that Wherley's request that Hersh be compensated

---

F.3d 173, 193 (5th Cir. 1999)). And the second factor generally cannot be used as a ground for enhancing the award. *Perdue v. Kenny A.*, 559 U.S. 542, 553 (2010).

[3]The court need not address Sanford's hourly rate in view of its finding below that his fees are duplicative and should not be awarded.

at the same level as Sanford, who has considerably more experience, demonstrates that an hourly rate of $390 is completely arbitrary, and they submit the affidavit of their own attorney, R. S. Ghio, Esquire ("Ghio"), in which he avers that he charges a standard hourly rate of $315, and in fact lowered his rate in this case to $290 when his clients presented him with evidence that other attorneys charge less than $315 per hour.  Defendants also attach a 2011 publication from the State Bar of Texas, Department of Research & Analysis (the "Report") that details the median hourly rates charged by attorneys in Texas.  The Report includes the median hourly rates for attorneys in certain cross-sections of the general attorney population, such as years of experience, practice area, and location.  Defendants note that the median rate for labor and employment attorneys in the Dallas-Fort Worth area was $259, and the median rate for attorneys in the region generally with Hersh's 15 years of experience and Sanford's 27 years of experience was $240 and $284, respectively. Finally, defendants argue that Hersh's hourly rate should be less than Sanford's, not only due to their levels of experience but also because Hersh's billing reveals his inexperience in FLSA litigation, as demonstrated by the considerable amount of legal research he had to perform in this case.

B

Last November, this court found that an hourly rate of $350 was reasonable for plaintiffs' attorneys in an FLSA overtime case. *See Arriaga v. Califco, LLC*, 2013 WL 5928852, at *1 (N.D. Tex. Nov. 5, 2013) (Fitzwater, C.J.) ("Given the attorneys' respective levels of experience and the relevant prevailing rates, together with [plaintiff's] showing that courts have awarded fees using similar rates, the court, as an expert as to the reasonableness

of attorney's fees, finds that [$350 per hour is] customarily charged in this locality for similar legal services and [is] reasonable."), *appeal docketed*, No. 13-11327 (5th Cir. Dec. 9, 2013). One attorney was licensed in 1991 and the other in 1994, both had extensive experience litigating FLSA cases, and other judges of this court had previously approved awards for these attorneys at the hourly rate of $350. By comparison, Hersh was licensed in November 1998, and he is board certified in labor and employment law. Based on the court's expertise in determining reasonable attorney's fees, Hersh's experience and qualifications, and the nature of this litigation, the court finds that the hourly rate of $325.00 is reasonable for Hersh's services.

IV

The court now determines the number of hours reasonably spent by Wherley's counsel.

A

Defendants present a general objection to Wherley's request for any fees for Sanford's services. They maintain that there was no reason for a second trial lawyer given that the trial was neither long nor complicated and involved only three witnesses and fewer than 30 exhibits, and that his fees should be excluded entirely.

As noted, the court should exclude all time that is duplicative. *Jimenez*, 621 F.3d at 379-80. "If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized." *Johnson*, 488 F.2d at 717. This court has disallowed on this basis time expended by multiple attorneys who attended trial

unnecessarily. *See, e.g., Barrow*, 2005 WL 6789456, at *15 (disallowing as duplicative fees for two of four attorneys who represented plaintiff at trial where plaintiff failed to meet her burden of demonstrating why it was necessary for four attorneys to attend trial).

Sanford was brought in to try the case with Hersh, but there is no apparent reason why it was necessary for Wherley to be represented at trial by two attorneys. This case was neither factually nor legally complicated. The trial itself involved just three witnesses—Wherley, John, and Unjoo—and a relatively modest number of exhibits (fewer than 30). Including jury selection and jury deliberations, the entire trial took just over 3½ days to complete. In reply to defendants' objection, Wherley states that Sanford "did not begin participating in this action until shortly before trial." Ps. Reply Br. 6. He relies on the conclusory assertion that Sanford's "participation resulted in greater efficiency, not less." *Id.* And he contends that defendants have failed to identify any duplicative or redundant time entries for trial or to cite supportive case law. But Wherley has the burden as fee claimant of substantiating the requested hours. He has not demonstrated that it was necessary for Hersh—who is board certified in labor and employment law and who has been licensed for more than 15 years—to associate another attorney to try a straightforward, uncomplicated lawsuit involving relatively small claims for unpaid overtime and retaliation.[4] And the court

---

[4]In his reply brief, Wherley acknowledges that he recovered $8,069.00 of the $14,683.00 in actual damages that he sought. In support of his analysis of the *Johnson* factor that considers the "undesirability" of the case, Wherley concedes that "the amount of [his] damages [is] comparatively small relative to the damages in cases frequently litigated in federal court." P. Br. 14. Although the relatively small amount of available damages may support other aspects of an FLSA fee application—e.g., the fee that is necessary to attract

finds that it was not. The court therefore disallows any of the fees claimed for Sanford's services on the ground that they are duplicative.

B

Defendants specifically object to 4.7 hours that Hersh spent on April 11, 2013 and April 12, 2013 on Wherley's unsuccessful motion for summary judgment. They contend that, although Wherley purports in his application to exercise billing judgment by eliminating all time for his unsuccessful summary judgment motion, these entries reflect time that Hersh spent reviewing the Schellsmidts' deposition transcripts in connection with that motion. Wherley acknowledges that the entries describe time expended "in connection with MSJ." P. App. 16. But he maintains that the time should not be excluded because he used the work product created during this time to prepare for trial.

The court declines to exclude the 4.7 hours that defendants challenge. The court finds that it was reasonably necessary for Hersh to review the deposition testimony of John and Unjoo when preparing for trial.

C

Defendants next argue that Wherley's attorneys' time entries utilize block billing and vague descriptions of the tasks performed, making it difficult to determine the number of hours spent on any specific task. They maintain that, for Hersh, the practice of block billing was pervasive from December 15, 2011 until January 26, 2014, citing specifically a time

---

competent counsel to prosecute such a claim—it cuts against an award of fees for the services of two lawyers when only one is needed.

entry for March 28, 2013 in which Hersh did not break out the portion of 5.5 hours spent on a deposition from the portion spent on the strategy session with his client regarding the deposition and the summary judgment motion. Wherley responds that Hersh's March 28, 2013 billing entry is reasonable because the transcript of Unjoo's deposition itself shows that the deposition lasted approximately 5.5 hours,[5] which is what Hersh billed.

The term "block billing" refers to the disfavored "time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, 2011 WL 487754, at *4 (N.D. Tex. Feb. 11, 2011) (Fitzwater, C.J.) (citation omitted). Block billing is disfavored because it prevents the court from accurately determining the time spent on any particular task, thus impairing the court's evaluation of whether the hours were reasonably expended. *Id.* "For example, a person engaging in block billing would record the total amount of time spent on a case that day, and then group several tasks under that single entry, leaving the court unable to determine how much time was devoted to a given task." *Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, 2013 WL 598390, at *4 (N.D. Tex. Feb. 15, 2013) (citing *Fralick*, 2011 WL 487754, at *5), *rev'd on other grounds*, 747 F.3d 275 (5th Cir. 2014), *petition for cert. filed*, 82

---

[5]Defendants move to strike Wherley's reply appendix, which includes, *inter alia*, evidence that the March 28, 2013 deposition lasted approximately 5.5 hours. Because defendants do not contest this evidence, the court will consider it. Because the court has not relied on any of the other evidence contained in Wherley's reply appendix in deciding this motion, the court denies defendants' motion to strike as moot.

U.S.L.W. 3686 (U.S. May 13, 2014) (No. 13-1371).

The court concludes that, although Hersh's March 28, 2013 5.5 hours billing entry stating "Depose Defendant Un Joo Schellsmidt; strategy session w KW re deposition and summary judgment motion," P. App. 15, is a form of block billing, Hersh actually expended 5.5 hours deposing Unjoo, whose deposition lasted from 9:35 a.m. to 2:56 p.m. (approximately 5.5 hours). Accordingly, the court declines to reduce this time entry on the basis that it is block billed.[6]

D

For Hersh's services, the court calculates the lodestar fee based on 220.6 hours at an hourly rate of $325.00, which totals $71,695.00

V

The court now considers whether the lodestar fee should be adjusted upward or downward. Based on the *Johnson* factors, defendants maintain that the court should adjust the lodestar fee downward 60% for unsuccessful causes of action and rejections of claims.

---

[6]Although there are similar examples of block billing that can be found in the attorneys' time records, defendants do not challenge them other than by challenging Hersh's billing from December 15, 2011 until January 26, 2014 and Sanford's billing "for the entire time he was on the case." Ds. Br. 7. If a party does not object to particular billing entries as inadequately documented, the court is not obliged *sua sponte* to sift through fee records searching for vague entries or block-billing. *See generally La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995) (holding that district court erred in failing to conduct full analysis of billing records "[a]s to the specific items of which [opposing party] complains"). "It is a common practice for courts to address only those potentially inadequate entries brought to the court's attention." *Inclusive Cmtys. Project*, 2013 WL 598390, at *5 n.7 (citing cases).


Wherley contends the lodestar should not be adjusted upward or downward.

A

Once the lodestar amount is determined, there is a strong presumption that it represents a reasonable fee. *See Perdue v. Kenny A.*, 559 U.S. 542, 553-54 (2010); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). The court can adjust the lodestar upward or downward after assessing the properly-considered *Johnson* factors, but the party seeking the adjustment bears the burden of establishing that an adjustment is warranted. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995) (citing *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 413 (2d Cir. 1989)). Many of the *Johnson* factors are "presumably fully reflected in the lodestar amount," however, so such modifications are proper only in certain "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings." *Del. Valley Citizens' Council*, 478 U.S. at 565 (citing *Blum*, 465 U.S. at 898-901).

Although both sides address the *Johnson* factors, defendants' principal argument for a downward adjustment of the lodestar amount is based on the "proportionality of the fees sought to the recovery obtained." Ds. Br. 13 n.8; *see id.* at 12 ("Defendants contend that the *Johnson* factors merit particular attention given the disproportionate relationship between the recovery in this case and the fees sought by Plaintiff's counsel."). "A plaintiff's degree of success is the most critical *Johnson* factor for determining reasonableness of the fee award." *Inclusive Cmtys. Project*, 2013 WL 598390, at *2 (citing *Barrow*, 2005 WL 6789456, at *18). "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though

he succeeded on only some of his claims for relief." *Hensley*, 461 U.S. at 434. "Determining fee reasonableness based on the degree of success depends initially on whether the plaintiff's claims for relief were related." *Inclusive Cmtys. Project*, 2013 WL 598390, at *2 (citing *Hensley*, 461 U.S. at 434-45).

B

The court holds that Wherley's FLSA overtime claim and FLSA retaliation claim involved a "common core of facts" and were based on "related legal theories." *Id.* The court therefore focuses next on "the significance of the overall relief obtained by [Wherley] in relation to the hours reasonably expended on the litigation." *Id.* (citing *Hensley*, 461 U.S. at 435).

Before Wherley filed his complaint in this case, the Department of Labor ("DOL") investigated his claim for unpaid overtime and concluded that he was an employee of Audio Depot and was therefore entitled to unpaid overtime for a period of two years, in the amount of $8,467.61. Audio Depot entered into an agreement with the DOL to pay that amount. But before Audio Depot paid Wherley, he demanded additional damages, requested that Audio Depot sign a tolling agreement, and filed this lawsuit seeking three years of unpaid overtime compensation, an equal amount in liquidated damages, additional compensation for working during lunch periods, and damages for his retaliation claim. Although Wherley was successful on his claim for liquidated damages, the jury awarded him less in actual damages than what the DOL calculated and Audio Depot had agreed to pay, the jury awarded no damages for a third year (despite its finding of a willful violation), the jury awarded no

damages for time allegedly worked during lunch periods, and the jury rejected Wherley's retaliation claim. Defendants thus contend that the court should adjust downward the lodestar amount to reflect the minimal amount in controversy in this case (less than $25,000 in potential damages) and to account for the fact that Wherley ultimately succeeded on only part of one of his claims.

Wherley responds that, although defendants have attacked his degree of success, he did prevail on the central theory of this case: he recovered $8,069.00 of the $14,683.00 in actual damages he sought, and the amount of actual damages and liquidated damages awarded ($16,139.00) exceeds the actual damages sought. Because Wherley obtained roughly 110% of the actual damages requested, recovered more than the DOL's proposed amount (and more than 150% of the greatest settlement amount offered by defendants[7]), and obtained a favorable outcome on the most fervently defended claims—misclassification and liquidated damages—no additional adjustment is warranted beyond the 15% that Wherley has already applied.

"There is no precise formula for courts to use in reducing the lodestar amount to reflect a plaintiff's limited success." *Williams v. Shinseki*, 2013 WL 1875055, at *6 (N.D. Tex. May 6, 2013) (Fitzwater, C.J.) (citing *Wright v. Blythe-Nelson*, 2004 WL 2870082, at *8 (N.D. Tex. Dec. 13, 2004) (Fitzwater, J.)). "[A] mathematical approach comparing the total number of issues in the case with those actually prevailed upon" is inappropriate

---

[7]Wherley contends that Audio Depot never offered him more than $10,468.00, inclusive of fees and costs, to settle this case.

because "[s]uch a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors," and because it is not "necessarily significant that a prevailing plaintiff did not receive all the relief requested." *Hensley*, 461 U.S. at 435 n.11. When a plaintiff obtains "excellent results, [his] attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation[.]" *Id.* at 435. But where a plaintiff "achieve[s] only partial or limited success," granting full compensation may be excessive, and the court may reduce the attorney's fees award to account for the limited success. *Id.* at 436.

The court finds that, although Wherley prevailed on his FLSA overtime claim, established a willful violation of the FLSA, and obtained liquidated damages (which the DOJ's proposed settlement amount did not include), his results were not "excellent" overall because the jury did not award the full amount of actual damages Wherley requested, did not award any damages for the third year of defendants' willful behavior, and did not find for Wherley on his FLSA retaliation claim. Nevertheless, Wherley has already reduced Hersh's hours by 15% to account for his somewhat limited success at trial, an attorney's fees award can exceed the actual damages awarded and still be reasonable,[8] and the court finds that no

---

[8]*See, e.g., Norsworthy v. Nguyen Consulting & Servs., Inc.*, ___ Fed. Appx. ___, 2014 WL 3338795, at *1 (5th Cir. July 9, 2014) (per curiam) (noting that success is not measured merely based on the recovery of monetary damages, because "'a civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards.'" (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986))).

additional reduction is warranted.[9]  The court therefore declines to adjust the lodestar fee downward to any further extent than Wherley has already in his fee application.

VI

Wherley also seeks $470.79 in nontaxable expenses.  Defendants do not challenge this request, and the court grants it.

VII

In sum, the court finds that Hersh's reasonable hourly rate is $325.00, and that he reasonably expended 220.6 hours representing Wherley.  This results in a lodestar fee of $71,695.00.  The court concludes that all fees for Sanford should be disallowed as duplicative because it was unnecessary for Wherley to be represented by two attorneys.  The court awards Wherley the sum of $470.79 in nontaxable expenses.

\* \* \*

For the reasons explained, the court grants in part and denies in part Wherley's motion for attorney's fees and expenses, awarding him the sum of $71,695.00 in attorney's fees and the sum of $470.79 in nontaxable expenses.  The court denies as moot defendants' May 22, 2014 motion to strike the appendix to plaintiff's reply in support of motion for attorney's fees

---

[9]Notably, with the 15% reduction, Hersh's hours total 220.6.  Defendants' counsel states that his hours total 175.3.  Therefore, for Hersh's services, Wherley, the prevailing party, is seeking just 45.3 more hours than were expended by counsel for the non-prevailing parties.

and expenses.

      **SO ORDERED.**

July 16, 2014.

<div style="text-align: right;">
_____<br>
SIDNEY A. FITZWATER<br>
CHIEF JUDGE
</div>